IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM H. SCOTT, JR., | ) | Civil Action No. 11- |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | |
| SUPERVALU INC., | ) | Electronically Filed |
| | ) | |
| Defendant. | ) | Jury Trial Demanded |

**COMPLAINT**

**NATURE OF THE ACTION, JURISDICTION AND VENUE**

1.   This is an individual action under the Civil Rights Act of 1866 (Section 1981), as amended (42 U.S.C. §1981), to recover damages for unlawful actions taken by Defendant against Plaintiff on the basis of race, including retaliation for having engaged in protected activities, and to make Plaintiff whole.

2.   Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331. This action is authorized and instituted pursuant to Section 1981.

3.   The actions and policies alleged to be unlawful were committed in and around New Stanton, PA, where Defendant operates a facility and where Plaintiff worked and, therefore, this action is within the jurisdiction of, and venue is proper in, the United States District Court for the Western District of Pennsylvania.

4.  At all relevant times, Defendant Philips North America has been subject to the prohibitions against race discrimination and retaliation in Section 1981.

## PARTIES

5.  Plaintiff William Scott, Jr. (hereinafter referred to as "Plaintiff" or "Scott"), is a citizen of the Commonwealth of Pennsylvania and resides at 707 11th Street, Charleroi, PA 15022.

6.  At all relevant times, Defendant SUPERVALU Inc. (hereinafter referred to as "Defendant" or "SUPERVALU"), is a grocery distribution and supply business with its headquarters in Eden Prarie, MN, and also a Pittsburgh Distribution Center, where Plaintiff worked, at 400 Paintersville Road, New Stanton, PA 15672.

7.  At all relevant times, Defendant has been subject to the prohibitions against race discrimination and retaliation in Section 1981.

## BACKGROUND AND STATEMENT OF CLAIMS

8.  Plaintiff was employed by Defendant as a casual order selector from in or about June 2004 until October 8, 2009, when he was terminated.

9.  Plaintiff's race is black.

10. Plaintiff performed his duties to the best of his ability and maintained satisfactory work performance throughout his tenure with Defendant.

11. On or about January 22, 2009, someone in the break room wrote the word "nigger" on a newspaper with President Barack Obama's picture.

12. Plaintiff's co-worker promptly turned over the newspaper to Plaintiff's Shift Supervisor.

13. About one week after Plaintiff's co-worker had turned over the newspaper to Plaintiff's Shift Supervisor, Plaintiff complained to the Shift Supervisor about the racist remarks written on the newspaper.

14. Plaintiff informed the Shift Supervisor that he was offended by the racist remarks.

15. Plaintiff asked his Shift Supervisor to try to determine who had written the racist remarks.

16. Plaintiff never received a response to his complaints from Defendant.

17. Around April 2009, Plaintiff and two co-workers (who were also black) contacted the NAACP to discuss the newspaper incident. As a result of their having contacted the NAACP, the NAACP contacted Defendant via telephone to discuss the newspaper incident.

18. Soon after the NAACP contacted the Defendant via telephone to discuss the newspaper incident, Defendant terminated one of the co-workers of Plaintiff who had contacted the NAACP.

19. After this co-worker was fired, in or about May 2009 a representative of the NAACP held a meeting with Defendant to discuss claims about racism against blacks at Defendant's facility in New Stanton.

20. The NAACP was responding to complaints made to it by Plaintiff and the two other black

**co-workers.**

21.  **Plaintiff had had no disciplinary problems either before the newspaper incident or before the NAACP met with Defendant.**

22.  **Plaintiff received no disciplinary actions during his employment until about one week before he was terminated.**

23.  **On or about October 2, 2009, Plaintiff received a "Verbal Warning" from Defendant for allegedly having "shorted out" a pallet by 1 full case.**

24.  **Plaintiff did not "short out" the pallets.**

25.  **Irrespective of whether Plaintiff did or did not "short out" the pallet, a Verbal Warning is the least of any disciplinary measure; Plaintiff was not suspended and did not lose any pay.**

26.  **On or about October 5, 2009, the other black co-worker who had complained about racism along with Plaintiff was terminated.**

27.  **On or about October 8, 2009, Plaintiff was terminated.**

28.  **He was told the reason was "absenteeism."**

29.  **The reason was false.**

30. Plaintiff did not have any problems with "absenteeism" under Defendant's policy.

31. Moreover, white employees who did have problems with absenteeism were neither disciplined nor terminated.

32. The real reason for the termination was Plaintiff's race (black) and retaliation for Plaintiff's complaining about race discrimination.

33. Defendant's actions were a violation of Section 1981's prohibition against race discrimination.

### COUNT I: RACE DISCRIMINATION (SECTION 1981)

34. Plaintiff hereby incorporates by reference Paragraphs 1 through 33 of his Complaint as though the same were more fully set forth herein.

35. Plaintiff is in the protected group based on race (black).

36. Plaintiff was qualified for the position in question (casual order selector).

37. Plaintiff suffered an adverse action, i.e. termination.

38. Plaintiff was treated less favorably than whites in similar circumstances.

39. The reason given for the adverse action was pretextual and inconsistent with normal procedure/policy.

40. Defendant's actions were in violation of Section 1981's prohibition against race discrimination.

41. Defendant knew its actions against Plaintiff were in violation of Section 1981.

42. Plaintiff has suffered tangible and intangible losses resulting from Defendant's violations of the law: loss of pay; loss of business opportunities; loss of promotional opportunities; humiliation; mental anguish; and, damage to reputation.

43. Plaintiff is seeking lost wages, lost business opportunities, compensation for pain and suffering, attorney's fees and costs.

44. Defendant's violations of the law were knowing and willful and with malicious intent. Plaintiff is therefore also seeking punitive damages under Section 1981.

### COUNT II: RETALIATION (SECTION 1981)

45. Plaintiff hereby incorporates by reference Paragraphs 1 through 44 of his Complaint as though the same were more fully set forth herein.

46. Plaintiff engaged in protected acts (complained to management both directly and indirectly - through the NAACP - about race discrimination).

47. Plaintiff suffered an adverse action following the protected acts (employment terminated).

48. There is a causal connection between the protected acts and the adverse employment

action.

49.   The retaliation is in violation of Section 1981's prohibition against retaliation.

50.   Plaintiff has suffered tangible and intangible losses resulting from Defendant's violations of the law: loss of pay; loss of promotional opportunities; humiliation; mental anguish; and, damage to reputation.

51.   Plaintiff is seeking lost wages, compensation for lost opportunities and for pain and suffering, attorney's fees and costs.

52.   Defendant's violations of the law are knowing and willful and with malicious intent. Plaintiff is therefore also seeking punitive damages under Section 1981.

## PRAYER FOR RELIEF

53.   WHEREFORE, Plaintiff requests judgment against Defendant for:
   A.   Grant a permanent injunction enjoining Defendant, its officers, successors, and assigns and all persons in active concert or participation with them from engaging in any employment actions or practices which discriminate on the basis of race or that retaliate against individuals who oppose such discrimination.
   B.   Order Defendant and each of its agents and officers to institute and carry out policies, practices, and programs which provide equal employment opportunities for minorities and which eradicate the effects of its past and present unlawfully discriminatory employment practices.
   C.   Order Defendant to compensate Plaintiff for the emotional distress sustained as a result of Defendant's illegal actions.

    **D.**    **Order Defendant to pay compensatory damages.**

    **E.**    **Order Defendant to pay the costs and reasonable attorney's fees incurred by Plaintiff.**

    **F.**    **Grant such further relief as the Court deems necessary and proper.**

**Respectfully submitted,**

**s/Joseph H. Chivers**
**Joseph H. Chivers, Esquire**
**PA ID No. 39184**
**First & Market Building**
**Suite 1010**
**100 First Avenue**
**Pittsburgh, PA  15222-1514**
**jchivers@employmentrightsgroup.com**
**(412) 227-0763**
**(412) 281-8481 FAX**

**Counsel for Plaintiff**
**William H. Scott, Jr.**

**DATED:  February 22, 2011**